UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ROSELLAMAY HAMPTON,

     Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Civil Action No.  16-12135

HON. MATTHEW F. LEITMAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Mary Rosellamay Hampton ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On May 8, 2013, Plaintiff filed an application for DIB, alleging disability as of December 1, 2012 (Tr. 165-171).  After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on October 8, 2014 in Flint, Michigan before Administrative Law Judge ("ALJ") Kevin W. Fallis (Tr. 45).  Plaintiff, represented attorney

Robert McDonald, testified (Tr. 51-91), as did Vocational Expert ("VE") Michelle Robb (Tr. 91-96). On December 22, 2014, ALJ Fallis found Plaintiff not disabled (Tr. 22-40). On May 23, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision in this Court on June 10, 2016.

## BACKGROUND FACTS

Plaintiff, born July 14, 1966, was 48 when ALJ Fallis issued his decision (Tr. 40-165). She completed 12th grade and worked previously as a cashier, food preparation worker, and sales associate (Tr. 185). She alleges disability as a result of depression, fibromyalgia, arthritis of the shoulder, Carpal Tunnel Syndrome ("CTS"), and upper extremity tendon injuries (Tr. 184).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in a single-family home in Genesee, Michigan with her husband and son (Tr. 51-52). She was right-handed (Tr. 52). She lost 35 pounds in the last year as a result of abdominal surgery resulting in a hiatal hernia (Tr. 52-53). She held a current driver's license but did not drive more than short distances once a week due to lower and upper extremity numbness and neck pain (Tr. 53-54). She stopped working in November, 2012 (Tr. 55). Before ceasing work, she held a part-time position as a retail salesperson in a beauty supply store (Tr. 55). She never held a full-time job (Tr. 55). She was discharged after being falsely accused of theft (Tr. 56). Prior to the discharge, she experienced problems stooping and reaching overhead and required rest periods in addition to her regularly scheduled breaks (Tr. 56). In 2007, she held retail positions at various dollar stores (Tr. 57). The work required her to lift up to 20 pounds (Tr. 58).

Plaintiff denied current medication side effects (Tr. 59). In the past, she experienced the side effects of "severe migraines" from Cymbalta and face, neck, foot, and hand swelling from Lyrica (Tr. 60).

Plaintiff was unable to work due to the fibromyalgia-related symptoms of headaches and neck, shoulder, arm, wrist, hand, hip, knee, foot, and back pain and stiffness (Tr. 61). She had experienced symptoms of fibromyalgia for at least the last 10 years (Tr. 62). The symptoms of fibromyalgia had worsened in recent years (Tr. 62). In addition to her prescribed medications, she used hot packs eight to ten times a day to relieve body pain (Tr. 62-63). Hot baths temporarily relieved the body pain but she experienced problems getting out of the tub by herself (Tr. 63).

In addition to the fibromyalgia, she had experienced CTS and other wrist problems for approximately 15 years (Tr. 64-65). The wrist conditions were worsening (Tr. 65). She also experienced right hip pain which radiated into her lower right leg and prevented her from sitting for extended periods (Tr. 65-66). She was unable to lift significant weight due to back problems (Tr. 66). She was unable to walk for significant distances due to Chronic Obstructive Pulmonary Disease ("COPD") and/or emphysema (Tr. 67).

Aside from her physical limitations, Plaintiff experienced depression and had been taking Effexor for the past five years (Tr. 68-69). She had been depressed since she was a teenager but had only recently begun psychological therapy and had not yet received a diagnosis (Tr. 68-70). She first experienced depression after her mother passed away and was currently depressed by marital problems and her health conditions (Tr. 71).

Plaintiff was unable to lift even eight pounds on an occasional basis or sit or stand for more than 10 minutes at a time (Tr. 71-72). She was unable to walk more than 25 feet without experiencing pain (Tr. 72). She performed "very few" household chores but was

able to prepare simple meals (Tr. 72-73, 75).  She grocery shopped twice a month with the help of either her son or daughter (Tr. 73).  She did not use a motorized cart when grocery shopping (Tr. 74).  She did not use a cane or walker but had been given a handicap sticker for her car (Tr. 75).  She performed most self-care activities independently but required her daughter's help when washing her hair (Tr. 76).  She enjoyed television shows but experienced concentrational problems due to fibromyalgia (Tr. 76).  She did not participate in outside activities and was unable to sleep more than three hours a night (Tr. 77-78).  She took two 90 minute naps every day (Tr. 78).  She had a few friends with whom she spoke on the phone but was able to visit with family members at the holidays (Tr. 79).  She was no longer able to walk her dog but since December, 2012 had traveled "up north" to visit her sister-in-law, and another time to check on some property owned by her husband (Tr. 80-81).  She smoked around a half pack of cigarettes each day but did not use alcohol (Tr. 81).

In response to questioning by her attorney, Plaintiff reported that during her stint working at a dollar store, she worked around 15 to 17 hours a week and on a "good" week, worked at the beauty supply store up to 22 hours (Tr. 82).  In addition to the fibromyalgia treatment, she received injections for shoulder problems (Tr. 83).  The injections helped her shoulder condition for only one week (Tr. 83).  She did not use wrist braces for CTS because her previously prescribed braces did not fit (Tr. 84).  On a scale of one to ten, she experienced level "ten" pain without medication and level "eight" with (Tr. 85).  She had not received a recommendation for either shoulder or back problems (Tr. 84-85).  She experienced both numbness and pain in her right lower extremity (Tr. 86).  She experienced bowel and bladder problems since undergoing a hysterectomy the previous year (Tr. 87).  She required frequent bathroom breaks due to bladder problems (Tr. 87).  Due to fibromyalgia, she experienced daily neck and head pain (Tr. 87-88).  The above-described symptoms

-4-

precluded all work (Tr. 89).

   **B.   Medical Evidence[1]**

### 1. Treating Records

   November, 2009 records by Delia Ebuen-Mercado, M.D. note Plaintiff's fibromyalgia-type symptoms (Tr. 385-386). Plaintiff reported side effects from both Cymbalta and Lyrica (Tr. 385). A January, 2010 MRI of the lumbar spine showed mild degenerative disc disease at L5-S1 but no other abnormalities (Tr. 400). An MRI of the cervical spine showed only minimal disc bulging at C5-C6 and C6-C7 (Tr. 398). In March, 2010, rheumatologist Sosa V. Kocheril, M.D. noted a history of "arthralgias" (Tr. 301, 416-417). Imaging studies of the feet, ankles, lumbar spine, hips, hands, shoulders, and cervical spine showed evidence of mild, minimal, or "very minimal" degenerative changes (Tr. 337-353).

   April, 2012 treating records note that Plaintiff, seeking treatment for a bacterial infection, was in no acute distress (Tr. 425). In May, 2012, Dr. Ebuen-Mercado referred Plaintiff for a diagnostic endoscopy of the esophagus which showed the presence of Barrett's esophagus (Tr. 294, 676). November 30, 2012 records by Dr. Ebuen-Mercado note "no acute distress" (Tr. 634). Dr. Ebuen-Mercado recommended aerobic exercise three days a week (Tr. 634).

   February, 2013 treating records by orthopedic surgeon A. George Dass, M.D. note Plaintiff's report of bilateral shoulder pain for the past 10 years (Tr. 224). Dr. Ebuen-Mercado urged Plaintiff to increase physical activity and lose weight (Tr. 593). Plaintiff reported limitations in "overhead activities" due to "moderate" pain (Tr. 224). Dr. Dass

---

[1]Treating records significantly predating the alleged onset day of December 1, 2012 are included for background purposes only.

administered steroid injections without complications (Tr. 224-228). The following month, a chest x-ray taken in response to Plaintiff's report of shortness of breath showed no significant abnormalities (Tr. 231-232, 249, 256). A stress test and other cardiac tests showed unremarkable results (Tr. 233-234, 237, 490, 571, 695-696, 711). Plaintiff reported fatigue resulting from fibromyalgia but denied memory problems (Tr. 656). She was advised to quit smoking (Tr. 625).

Dr. Ebuen-Mercado's August, 2013 records note Plaintiff's report that she was doing "poorly" due to fibromyalgia and depression (Tr. 618). Plaintiff exhibited a normal affect and mood (Tr. 620). September, 2013 physical therapy records note Plaintiff's report that she was limited to walking less than a quarter of a mile due to "extreme" hip pain (Tr. 451-452). Plaintiff noted that her back had "[gone] out" two weeks earlier (Tr. 448). Treating notes from the same month state that she was currently employed (Tr. 439). Sridhar Rao, M.D. noted that Plaintiff did not require an assistive device and could walk independently (Tr. 439). Followup therapy records from later the same month note "symptom magnification" (Tr. 428, 430, 432, 434, 438). December, 2013 records note a normal gait, station, mood, and affect (Tr. 707, 717).

In April, 2014, Plaintiff underwent a hysterectomy after a diagnosis of endometriosis (Tr. 363). Followup treating records were unremarkable (Tr. 357-358). July, 2014 records by Dr. Ebuen-Mercado note Plaintiff's report of "decreased energy level, but normal activity" (Tr. 606). An August, 2014 endoscopy of the esophagus showed the presence of Barrett's esophagus and a hiatal hernia but no other abnormalities (Tr. 383, 667, 672-673). Treating records by Dr. Ebuen-Mercado note Plaintiff's report that she was doing "poorly" as a result of fibromyalgia (Tr. 600). Plaintiff nonetheless appeared fully oriented with good insight and judgment and a normal affect (Tr. 602). The same month, Dr. Ebuen-Mercado completed

a medical source statement, stating that Plaintiff was incapable of all sitting, standing, or walking (Tr. 677).   Dr. Ebuen-Mercado found further that Plaintiff was unable to squat, kneel, or stoop and was limited to bending to no more than ten times each day (Tr. 677).   Dr. Ebuen-Mercado found that Plaintiff's ability to handle, reach, push/pull, or finger was "extremely limited" and that she was unable to lift more than five pounds on an occasional basis (Tr. 677).   She found that Plaintiff' symptoms of fibromyalgia would cause problems in understanding, remembering, or carrying out instructions or procedures and would require work breaks aside from customarily scheduled times (Tr. 678).   She found that Plaintiff would be expected to miss three or more days of work each month (Tr. 678).

Psychological intake records from the same month state that Plaintiff had not worked in two years due to medical issues (Tr. 688).   She reported stress due to financial stressors and her husband's alcoholism (Tr. 687).   She reported depression and anxiety since childhood (Tr. 684).

### 2.  Non-Treating Records

In June, 2013, Harold Nims, D.O. performed a consultative examination of behalf of the SSA, noting Plaintiff's self-acknowledged "primary problem" of recently worsening bilateral shoulder pain (Tr. 284).   Plaintiff reported "no help" from either injections or physical therapy (Tr. 284).   She reported that she had been diagnosed 15 years earlier with fibromyalgia and was currently taking Neurontin, Vicodin, and Flexeril (Tr. 284).   Plaintiff alleged a "long-term history of depression and anxiety" (Tr. 284).   She denied psychological therapy (Tr. 284).   She reported painful hips, wrists, and shoulder pain upon walking more than 25 feet (Tr. 284).   She admitted to the daily use of cigarettes (Tr. 285).

-7-

Dr. Nims observed that Plaintiff walked slowly and appeared "to be in pain" (Tr. 286). Plaintiff refused to walk on her toes, bend, or squat "apparently due to fear of pain" (Tr. 286). She did not require the use of a walking aid and appeared "stable in the standing, sitting, and supine positions" (Tr. 286). Plaintiff demonstrated a normal memory (Tr. 286). She exhibited shoulder tenderness but the elbows and wrists were "non-tender" (Tr. 287). She demonstrated full grip strength and the ability to perform fine manipulative activity (Tr. 287). The lower extremities appeared unremarkable (Tr. 287). Dr. Nims found the absence of hip joint tenderness (Tr. 287). He observed that Plaintiff had "many subjective symptoms of pain" but "no actual physical limitation" of the shoulders (Tr. 288). He found that Plaintiff was able to sit or stand for 15 minutes (Tr. 289). He concluded that Plaintiff's ability to bend, stoop, lift, walk, crawl, squat, carry, and push and pull was "at least moderately impaired" (Tr. 288).

The same month, Karen Marshall, Psy.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of a diagnosis of fibromyalgia "over 20 years ago" (Tr. 274). Plaintiff reported that she had good relationships with her children and in-laws and that her in-laws were "over weekly" (Tr. 275). She visited with her aunt once or twice a month and spoke with her out-of-town best friend by phone (Tr. 275). Plaintiff reported that she performed chores with "many breaks" (Tr. 275). She was able to make dinner every night (Tr. 275). Plaintiff reported that she drove herself to the appointment (Tr. 275). She alleged memory problems (Tr. 275).

Dr. Marshall observed that Plaintiff was appropriately dressed with an unremarkable posture and gait and organized mental activity (Tr. 275). Plaintiff appeared depressed but denied suicidal ideation (Tr. 275). Dr. Marshall concluded that Plaintiff had the ability to "understand, remember, and complete simple repetitive tasks" but would experience "mild

-8-

to moderate" limitation in the ability to remember and carry out complex tasks (Tr. 276).  Dr. Marshall found that Plaintiff's social abilities were unimpaired (Tr. 276).  She assigned her a GAF of 60[2] (Tr. 276).

Also in June, 2013, Jerry Csokasy, Ph.D. performed a non-examining review of the psychological-related records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 106-107).  The following month, Myung Ho Hahn, M.D. performed a non-examining review of the records documenting Plaintiff's physical conditions, finding that she was capable of lifting 20 pounds occasionally and 10 frequently; sitting, standing, or walking for a total of six hours in an eight-hour workday; and push/pulling without limitation (Tr. 109).  He found that Plaintiff was capable of stooping, kneeling, crouching, crawling, and climbing ramps and stairs on a frequent basis, and climbing ladders, ropes, or scaffolds on an occasional basis (Tr. 109).  Dr. Hahn did not find manipulative, visual, or communicative limitations but found that Plaintiff should avoid "even moderate exposure" to vibrations (Tr. 110).

### C.    Vocational Expert Testimony

VE Michelle Robb classified Plaintiff's past relevant work as sales clerk as exertionally light and semiskilled[3] (Tr. 92).  The ALJ then described a hypothetical individual

---

[2]

A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* ("*DSM–IV–TR*"), 34 (4th ed.2000).

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

of Plaintiff's age, educational level, and work experience:

> [T]his individual is limited to sedentary work.  They could perform occasional pushing and pulling.  They could occasionally operate foot controls.  They could never climb ladders, ropes or scaffolds.  They could occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, crawl.  They could perform occasional overhead reaching.  They would be limited to frequent handling of objects and fingering bilaterally.  They would have to avoid concentrated exposure to extreme cold, extreme heat, and to humidity.  They would have to avoid concentrated exposure to environmental irritants such as fumes, odors, dust, and gases.  They would have to avoid all exposure to excessive vibration, all use of hazardous moving machinery, all exposure to unprotected heights.  Additionally, this work would be limited to simple, routine, repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes (Tr. 94).

The VE testified that the above-limited hypothetical individual could not perform Plaintiff's past relevant work, but could perform the sedentary, unskilled work of an information clerk (58,000 positions in the nation); general office clerk (62,000); and hand packer (42,000) (Tr. 94).  The VE testified that the job numbers would remain the same if the limitations included the need for a sit/stand option (Tr. 95).  The VE testified that the need to be off task for at least 20 percent of the workday or, the need to miss two days of work each month would preclude all work (Tr. 95).  In response to questioning by Plaintiff's counsel, the VE testified that if the original hypothetical limitations were amended to include the need to nap for a total of three hours a day, or, a limitation to occasional (rather than *frequent*) handling and fingering, all work would be precluded (Tr. 96).

### D.  The ALJ's Decision

Citing the medical records, ALJ Fallis determined that Plaintiff experienced the severe impairments of "fibromyalgia, obesity, multilevel degenerative disc disease of the spine,

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

degenerative joint disease and osteoarthritis of the shoulders, hands, feet, and hips, bilateral [CTS], gastroesophageal reflux disease . . . a heart murmur, Barrett's esophagus, a hiatal hernia, and a depressive disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24, 27).  He found that the conditions of asthma and COPD were non-severe (Tr. 26-27).  Due to moderate depression, he found that Plaintiff experienced mild restriction in activities of daily living and social functioning, and moderate limitation in concentration, persistence, or pace (Tr. 28-29).  He found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [S]he must be permitted to alternate between a seated and standing position, provided she is not off-task for more than 10% of the workday.  She can never climb ladders, ropes, or scaffolds, and can only occasionally push, pull, balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  In addition, the claimant is limited to the occasional operation of bilateral foot controls, occasional overhead reaching, and no more than frequent bilateral handling of objects and fingering.  Moreover, she must avoid concentrated exposure to extreme heat, extreme cold, humidity, and environmental irritants such as fumes, odors, dusts, and gases, and all exposure to excessive vibration, all use of hazardous moving machinery, and unprotected heights.  The claimant is further . . . limited to simple, routine, and repetitive tasks and simple work-related decisions in an environment free from fast-paced production requirements [] that require[] only routine workplace changes (Tr. 29-30).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her former work, she could work as a information clerk, general office clerk, and hand packer (Tr. 39-40, 94).

The ALJ discounted Plaintiff's allegations of disability, citing fibromyalgia testing results showing at most intermittent symptoms (Tr. 31-32).  He cited the January, 2014 treating records stating that she was capable of normal activities and July and August, 2014 records showing unremarkable results (Tr. 31-32).  The ALJ noted that EMG testing of the upper extremities showed no more than "mild" or "minimal" abnormalities and that the

arthritis of the hands and feet and CTS was deemed "mild" (Tr. 32-33).  The ALJ noted further that Plaintiff demonstrated full grip strength and the ability to perform fine manipulative activity without difficulty (Tr. 33).  The ALJ cited September, 2013 physical therapy records stating that Plaintiff was "currently employed" (Tr. 32).  He noted that by Plaintiff's own account, she was able to shop without an assistive device, drive regularly, perform a significant range of household activities, and take vacations (Tr. 33-34).

As to the allegations of depression, the ALJ noted that Plaintiff registered only a "few complaints of depression" before "late 2013" (Tr. 34).  He cited August, 2014 psychological intake records showing normal "memory, judgment, and insight" (Tr. 35-36).  The ALJ noted that Plaintiff was discharged from her most recent job due to "suspicions of theft as opposed to a physical or mental inability to perform her job requirements" (Tr. 35).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the

administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

While Plaintiff lumps several contentions into one long issue statement, her "one issue" motion actually contains several discrete arguments for remand. *See Plaintiff's Brief,* 12, *Docket #10,* Pg ID 769. First, she contends that the RFC for sedentary work did not account for her full degree of upper extremity limitation. Second, she faults the ALJ for discounting Dr. Ebuen-Mercado's August, 2014 treating opinion that she was unable to perform even sedentary work. Third, she argues that the ALJ failed to adequately consider

her limitations resulting from fibromyalgia.  *Id.*

Because resolution of the treating physician and fibromyalgia arguments is partially dispositive of the contentions regarding the RFC, the Court will address Plaintiff's claims in that order.

### A.  The Treating Physician Analysis

Plaintiff faults the ALJ for declining to adopt Dr. Ebuen-Mercado's August, 2014 finding that she was incapable of lifting more than five pounds, experienced disabling manipulative limitations, and required multiple naps each day.  *Plaintiff's Brief* at 18. Plaintiff contends that the treating records by the treating rheumatologists and orthopedist support Dr. Ebuen-Mercado's finding of extreme upper extremity limitation.  *Id.* at 14. Later, Plaintiff returns to the treating physician argument, contending in effect that the ALJ did not provide "good reasons" for discounting the opinion as required by SSR 96-2p.  *Id.* at 21.

"[I]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)*(citing Wilson,* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, see *Warner v. Commissioner of Social Sec*., 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2))[4].  The failure to articulate "good reasons" for rejecting a treating physician's

---

[4]

In the instance where the ALJ gives less than controlling weight to the treating

opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

As discussed in Section II.B.i, *above*, Dr. Ebuen-Mercado's medical source statement included the finding that Plaintiff was incapable of all sitting, standing, or walking (Tr. 677).   She found further that Plaintiff was unable to squat, kneel, or stoop, but could bend five to ten times each day and that the ability to handle, reach, push/pull, or finger was "extremely limited" (Tr. 677).   She found that Plaintiff was unable to lift more than five pounds on an occasional basis and that symptoms of fibromyalgia would cause problems in understanding, remembering, or carrying out instructions or procedures and would require Plaintiff to take work breaks aside from customarily scheduled times (Tr. 677-678).   She found that Plaintiff would be expected to miss three or more days of work each month (Tr. 678).

The ALJ accorded "little weight" to the treating opinion, noting that Dr. Ebuen-Mercado's "extreme recommendations," including the "complete inability to sit, stand, or

---

physician opinion, he must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.  Plaintiff concedes that the ALJ gave "lip service" to the factors, but nonetheless, failed to support the rejection of Dr. Ebuen-Mercado's findings with "objective evidence." *Plaintiff's Brief* at 23.

walk;" preclusion from all "squatting, kneeling, and stooping;" the need to elevate the legs "at all times;" and the "'extremely limited'" use of the arms for all activity stood "starkly at odds with the remaining proposals of record" (Tr. 37).

The ALJ cited Dr. Ebuen-Mercado's own treating records showing that Plaintiff admitted that she was capable of "normal activity" as of January, 2014 (Tr. 31). He observed that the same records showed an intact gait and unremarkable neurological function with full extremity strength (Tr. 32). He noted that upper extremity EMG testing showed only mild or minimal abnormalities (Tr. 32). He noted further that the diagnostic testing showed at most mild arthritis and CTS (Tr. 33). He cited Dr. Dass's findings that Plaintiff did not exhibit upper extremity atrophy and was able to perform fine manipulative functions (Tr. 33).

He found that Dr. Ebuen-Mercado's preclusion on all sitting, standing, or walking and "extreme" manipulative limitations was directly contradicted by Plaintiff's ability to cook on a daily basis, shop several times a month without the use of an assistive device, and drive on a regular basis (Tr. 33-34). The ALJ observed that Plaintiff's activities of daily living also contradicted the treating opinion that she lacked the concentrational abilities to perform unskilled work (Tr. 33-34). He cited numerous treating notes recording a normal mood and affect (Tr. 34). He reasonably concluded that Dr. Ebuen-Mercado's findings of extreme limitation were based on Plaintiff's subjective complaints rather than the treating records or daily activities (Tr. 37).

My own review of the treating notes shows that substantial evidence supports the ALJ's rejection of Dr. Ebuen-Mercado's findings. Only one day before the alleged onset of disability Dr. Ebuen-Mercado noted that Plaintiff was in no acute distress and recommended aerobic exercise three days a week (Tr. 634). Dr. Dass's February, 2013 records suggest that Plaintiff's upper extremity restrictions were limited primarily to

"overhead activities" (Tr. 224). Standing alone, Dr. Dass's findings directly contradict Dr. Ebuen-Mercado's finding of extreme manipulative limitations.[5] Contrary to Dr. Ebuen-Mercado's August, 2014 finding of no walking, sitting, or standing, in February, 2013, she advised Plaintiff to *increase* physical activity (Tr. 593). Dr. Nims' June, 2013 consultative records note Plaintiff's report that she was able to sit or stand for 15 minutes before changing positions (Tr. 289).[6] Records created by Dr. Ebuen-Mercado the same month as the disability opinion showing good insight and judgment with a normal affect do not suggest memory or concentrational problems (Tr. 602).

Because the ALJ provided "good reasons" for discounting Dr. Ebuen-Mercado's finding of extreme limitation, a remand on this basis is not warranted.

### B. SSR 12-2p

Plaintiff argues next that the ALJ erred by failing "to cite or apply" SSR 12-2p, the Social Security Ruling which pertains to the analysis of fibromyalgia. *Plaintiff's Brief* at 16.

Under SSR 12-2p, a finding that a claimant has the medically determinable impairment ("MDI") of fibromyalgia requires a diagnosis by an "acceptable medical source." 2012 WL 3104869, *2 (July 25, 2012). The evidence must also "document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* Here, the ALJ acknowledged both that the condition was an MDI and that Plaintiff experienced the severe impairment of fibromyalgia (Tr. 24). Thus, the question of whether she has established that fibromyalgia constitutes a MDI is moot.

---

[5]Dr. Dass's finding is reflected in the RFC restriction to only occasional overhead reaching (Tr. 29-30, 224).

[6]Dr. Nims' finding supports the RFC for sedentary work with a "sit/stand" option allowing Plaintiff to change position "provided she is not off-task for more than 10% of the workday" (Tr. 289, 29-30).

Nonetheless, the mere finding that the condition is an MDI and a severe impairment does not establish disability. SSR 12-2p directs that in determining whether the condition creates disability level limitation, the ALJ must also analyze the record as pursuant to SSR 96-7p, 1996 WL 362209 (July 2, 1996).[7] *Id.* at *5 The applicable prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [8]

The ALJ did just that (Tr. 30). He cited physical examinations showing full extremity strength, the ability to perform "gross and fine movements," and the ability to walk without the use of an ambulatory aid (Tr. 27). To the extent that Plaintiff alleges intermittent limitations fibromyalgia-related limitations due to the "waxing and waning," nature of the condition, the ALJ noted that her *regular* activities included cooking on a daily basis, driving, and household chores (Tr. 28, 34). He acknowledged Plaintiff's allegations of

---

[7]More commonly, the SSR 96-7p analysis is currently used in making credibility determinations.

[8]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in addressing the second prong of SSR 96-7p:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

mental fogginess resulting from fibromyalgia but noted that her claims were undermined by her ability to socialize with friends and family regularly; manage her own finances; drive; and travel alone (Tr. 24, 29, 34).    March, 2013 treating records stating that she denied memory problems also undermines her claim of mental fogginess resulting from the condition (Tr. 656).  As discussed above, the evidence includes multiple treating records showing normal judgment, affect, and memory.  The ALJ noted that despite Plaintiff's testimony that she experienced night time sleep disturbances, she reported that she was able to continue her normal activities (Tr. 31).  While Plaintiff claimed that she took two long naps each day, none of the treating records make reference to the need for prolonged daytime naps.  The ALJ noted that despite Plaintiff's allegations of worsening physical symptoms, "her treating source elected to keep her prescriptions unchanged" (Tr. 32).[9]

Plaintiff's contention that the ALJ committed reversible error by merely failing to cite SSR 12-2p is directly contradicted by *Luukkonen v. Commissioner of Social Security*, 653 Fed.Appx. 393, 399–400 (6th Cir. June 22, 2016), in which the Court found that the omission of citation to SSR 12-2p was at most, harmless error where "the ALJ concluded (1) that Plaintiff did have fibromyalgia, and (2) that her fibromyalgia constituted a "severe impairment" under the second step of the five-step analysis" and third, properly cited SSR 96–7p in finding that the condition did not cause disabling limitations.  *Luukkonen,* at 399-400 ("In sum, although the ALJ did not explicitly cite SSR 12–2p, it nevertheless applied the Ruling's principles. That is all that is required under our precedents")(internal citations omitted).

---

[9]

While the ALJ's determination, standing alone, amply supports the non-disability finding, the Court notes that the September and October, 2013 physical therapist's suggest that Plaintiff exaggerated her physical symptoms (Tr. 428, 430, 432, 434, 438).

**The RFC**

Plaintiff also argues that the RFC for "frequent bilateral handling of objects and fingering" overstates her manipulative abilities. *Plaintiff's Brief* at 13-14.  She cites SSR 96-9p which states that in terms of unskilled, sedentary work, "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.*; 1996 WL 374185,*8 (July 2, 1996).

"RFC is what an individual can still do despite his or her limitations." SSR 96–8p, *2 "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. *Id.* at 7. The analysis must include the non-exertional limitations. 20 C.F.R. § 404.1545. However, "'[although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.' " *Delgado v. CSS*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS,* 251 F.3d 153, slip op., 4 (Table)(3rd Cir. December 19, 2000)(punctuation added)). " '[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.' " *Id.* (*citing Bencivengo* at slip op. at 5).

 Plaintiff's claim that the RFC did not account for her full degree of upper extremity limitation does not provide grounds for remand.  The basis for RFC can be inferred from ALJ's discussion of the medical evidence and Plaintiff's daily activities (Tr. 25-35). However, later in the determination, the ALJ provided an independent rationale for the

-20-

limitations found in the RFC. He noted that while the evidence of a long-standing shoulder condition justified a restriction to occasional overhead reaching, the records showing at most "mild" CTS supported the finding that she could perform frequent (but not *constant*) bilateral handling and fingering (Tr. 36). The VE's testimony that the limitation of frequent handling and fingering would allow for the sedentary, unskilled work of an information clerk, general office clerk, and hand packer constitutes substantial evidence in support of the Step Five determination. *See Teverbaugh v. CSS*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003). Moreover, the ALJ's hypothetical restriction to frequent (rather than *occasional*) manipulative activity, as discussed above, is supported by substantial evidence consisting of the treating and consultative records as well as Plaintiff's acknowledged ability to drive, cook, perform household chores, and shop. Because the RFC is well supported and explained, her argument for remand on this basis is unavailing.

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate physical limitations and depression. Nonetheless, the ALJ's determination that she was capable of a significant range of unskilled sedentary work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 24, 2017

**CERTIFICATE OF SERVICE**

I hereby certify on July 24, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 24, 2017.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen