UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY R. HAMPTON,

     Plaintiff,                          Case No. 16-cv-12135
                                         Hon. Matthew F. Leitman

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS (ECF #19) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF #18), (2) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #10), (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #14), AND (4) REMANDING PLAINTIFF'S CLAIM FOR BENEFITS FOR FURTHER PROCEEDINGS**

In this action, Plaintiff Mary Rosellamay Hampton ("Hampton") alleges that the Commissioner of Social Security wrongly denied her application for Social Security disability benefits. After the parties filed cross-motions for summary judgment, the assigned Magistrate Judge issued a comprehensive Report and Recommendation in which he recommended that the Court (1) grant the Commissioner's Motion for Summary Judgment and (2) deny Hampton's Motion for Summary Judgment (the "R&R"). (*See* ECF #18.) Hampton filed timely objections to the R&R (the "Objections"). (*See* ECF #19.)

The Court has conducted a *de novo* review of the portions of the R&R to which Hampton has objected. While the Court appreciates the Magistrate Judge's careful consideration of the issues presented in the motions, for the reasons explained below, the Court respectfully disagrees with one aspect of his analysis and recommended disposition. Accordingly, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Hampton's objections, **GRANTS IN PART** Hampton's motion for summary judgment, **DENIES** the Commissioner's motion for summary judgment, and **REMANDS** this action to the Commissioner for further administrative proceedings consistent with this Opinion and Order.

# I[1]

## A

On May 8, 2013, Hampton filed an application for disability benefits under Title II of the Social Security Act (the "Application"). (*See* Application, ECF #6-6 at Pg. ID 205-216.) Hampton alleged that her period of disability began on December 1, 2012. (*See id.*) In the Application, Hampton claimed that she suffered from a number of disabling conditions, including:

- fibromyalgia
- severe depression
- muscle damage and rotator cuff damage in both shoulders
- carpal tunnel syndrome; and
- torn tendons in both elbows.

---

[1] The Court recites only the facts relevant to Hampton's Objections. A full description of the facts is available in the R&R.

(*See id.* at Pg. ID 209.)  On July 18, 2013, the Social Security Administration (the "SSA") denied the Application on the ground that Hampton was not disabled. (*See* Denial Letter, ECF #6-4 at Pg. ID 139-42.)

Hampton thereafter filed a written request for a hearing before an administrative law judge. (*See* Hearing Request, ECF #6-4 at Pg. ID 143-44.)  The hearing was held on October 8, 2014 before an administrative law judge (the "ALJ"). (*See* Hearing Tr., ECF #6-2 at Pg. ID 68.)

Hampton testified as follows at the hearing:

- She stopped working in November 2012. (*See id.* at Pg. ID 76.)  Before that time, she worked as a part-time salesperson at a beauty supply store. (*See id.*)
- She has been unable to work due to symptoms related to fibromyalgia, which include "headaches every day, neck pain, shoulder pain, [pain in her] arms, wrist, hands, hips, [] knees, [] feet, [] back[, and] practically [her] whole body." (*Id.* at Pg. ID 82.)  She also testified that that her body feels like she has rigor mortis. (*See id.*)
- Her carpal tunnel syndrome and other wrist problems were getting worse and were making it more difficult for her to use her upper extremities. (*See id.* at Pg. ID 85-86.)
- She can sit and stand for about ten minutes and experiences pain after walking "about 20, 25 feet." (*Id.* at Pg. ID 93.)
- She rarely drives, and when she does, she is able to drive for fifteen minutes. (*See id.* at Pg. ID 74-75.)

- She cannot get into a bathtub, and she typically requires assistance from a family member while bathing. (*See id.* at Pg. ID 87, 96.)
- She performs "very few" chores, and "very rarely" does dishes or laundry. (*Id.* at Pg. ID 93, 96.) She does not vacuum, mop, sweep, or dust the house. (*See id.* at Pg. ID 96.)
- She "very rarely" goes shopping by herself and instead shops with her son or daughter. (*Id.* at Pg. ID 94.) She needs to take frequent breaks while shopping and sometimes waits at a bench while her family shops without her. (*See id.*)
- She has memory loss. When she watches television, she has difficulty following and understanding what is happening. (*See id.* at Pg. ID 97.)
- She cannot sleep more than three or four hours at night. (*See id.* at Pg. ID 99, 109.) As a result, she typically takes a "couple" "hour and a half" naps during the daytime. (*Id.* at Pg. ID 99.)
- Since December 2012, she has traveled only twice. She attended a family wedding, and she took a day-trip to check on a family owned property. (*See id.* at Pg. ID 102.) During the seventy-five minute ride to the destination of the day-trip, she needed the driver of the vehicle to stop "a couple of times." (*Id.*)
- She has a dog, but she last took the dog for a walk two or three years ago. (*See id.* at Pg. ID 110.)
- Her symptoms and impairments prevent her from working. (*See id.*)

A vocational expert also testified at the hearing. To guide the vocational expert in her testimony, the ALJ described a hypothetical individual of Hampton's

age, educational level, and work experience, who had the following functional limitations:

> [T]his individual is limited to sedentary work. They could perform occasional pushing and pulling. They could occasionally operate foot controls. They could never climb ladders, ropes, scaffolds. They could occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, crawl. They could perform occasional overhead reaching. They would be limited to frequent handling of objects and fingering bilaterally. They would have to avoid concentrated exposure to extreme cold, extreme heat, and to humidity. They would have to avoid concentrated exposure to environmental irritants such as fumes, odors, dust, and gases. They would have to avoid all exposure to excessive vibration, all use of hazardous moving machinery, all exposure to unprotected heights. Additionally, this work would be limited to simple, routine, repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

(*Id.* at Pg. ID 114-15.) The vocational expert testified that the above-described hypothetical individual could not perform Hampton's past relevant work as a salesperson, but could perform the sedentary, unskilled work of an information clerk, general office clerk, and hand packer. (*See id.* at Pg. ID 115-116.)

The vocational expert also testified that an individual would be *unable* to perform any jobs in the national economy if the above hypothetical was amended to add *any one* of the following functional limitations:

- the need to be "off task 20 percent of the day in addition to [] regularly scheduled breaks";

- the need to be "absent from work two workdays per month";
- "the need to nap twice a day for an hour and a half due to pain and fatigue"; or
- a limit of only "occasional fingering and handling" (rather than "frequent fingering and handling").

(*Id.* at Pg. ID 116-17.)

On December 22, 2014, the ALJ issued a written decision denying Hampton's claim for benefits (the "ALJ's Decision"). (*See* ECF #6-2 at Pg. ID 43-61.) In that decision, the ALJ applied the SSA's required five-step sequential analysis to determine whether Hampton was disabled. (*See id.*) The five steps are as follows:

> **Step One:** Has claimant engaged in substantial gainful activity? If not, move to Step Two.
>
> **Step Two**: Does claimant suffer from one or more severe impairments? If so, move to Step Three.
>
> **Step Three:** Does claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If not, move to Step Four.
>
> **Step Four:** Considering claimant's residual functional capacity, can the claimant perform his or her past relevant work. If not, move to Step Five.
>
> **Step Five:** Considering claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy. If not, claimant is disabled.

20 C.F.R. § 404.1520.

At Step One, the ALJ found that Hampton had not engaged in substantial gainful activity since her claimed onset date of disability. (*See* ALJ's Decision, ECF #6-2 at Pg. ID 45.) At Step Two, the ALJ concluded that Hampton suffered from the following severe impairments:

- fibromyalgia;
- obesity;
- multi-level degenerative disc disease of the spine;
- degenerative joint disease and osteoarthritis of the shoulders, hands, feet and hips;
- bilateral carpel tunnel syndrome;
- gastroesophageal reflux disease ("GERD");
- a heart murmur;
- Barrett's esophagus;
- a hiatal hernia; and
- a depressive disorder.

(*Id.*)

At Step Three, the ALJ found that Hampton did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," which would have required a finding that Hampton was disabled. (*Id.* at Pg. ID 48-50.) The ALJ concluded, as relevant here, that Hampton's claimed limited ability to use her hands and wrists failed to satisfy the requirements of Listing 1.02, which concerns major dysfunction of a joint or joints. In support of that determination, the ALJ noted that "[p]hysical examinations regularly cite her retention of full extremity strength and

her ability to walk and climb stairs independently, *as well as the unimpaired use [sic] arms for gripping and handling small objects* (see, e.g., Exhibits 2F/7 and 5F)." (*Id.* at Pg. ID 48; emphasis added.)

At Step Four, the ALJ found the Hampton had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [S]he must be permitted to alternate between a seated and standing position, provided she is not off-task for more than 10% of the workday. She can never climb ladders, ropes, or scaffolds, and can only occasionally push, pull, balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. In addition, the claimant is limited to the occasional operation of bilateral foot controls, occasional overhead reaching, and no more than frequent bilateral handling of objects and fingering. Moreover, she must avoid concentrated exposure to extreme heat, extreme cold, humidity, and environmental irritants such as fumes, odors, dusts, and gases, and all exposure to excessive vibration, all use of hazardous moving machinery, and unprotected heights. The claimant is further . . . limited to simple, routine, and repetitive tasks and simple work related decisions in an environment free from fast-paced production requirements that require only routine workplace changes.

(*Id.* at Pg. ID 50-51.)  Based on this RFC, the ALJ concluded that Hampton was unable to perform any of her past relevant work as a salesperson. (*See id.* at Pg. ID 59.)

Finally, at Step Five, the ALJ relied upon the vocational expert's testimony at the hearing to find that Hampton has the RFC to work as an information clerk, general office clerk, and hand packer and that these jobs existed in significant

numbers in the national economy. (*See id.* at Pg. ID 60-61.)  Thus, the ALJ found that Hampton was not disabled. (*See id.*)

At Steps Four and Five, the ALJ did not purport to apply Social Security Ruling 12-2p ("SSR 12-2p"), the Social Security Ruling that addresses how to analyze fibromyalgia.  SSR 12-2p, in part, requires that an administrative law judge consider "widespread pain and other symptoms associated with [fibromyalgia], such as fatigue . . . ." 2012 WL 3104869, at \*6 (July 25, 2012).  In the ALJ's Decision, the ALJ did not expressly address the effect of Hampton's fibromyalgia-related fatigue on her ability to function.

## B

On June 10, 2016, Hampton filed this action challenging the SSA's denial of benefits. (*See* Compl., ECF #1.)  The case was referred to the assigned Magistrate Judge. (*See* ECF #3.)  Hampton and the Commissioner then filed cross-motions for summary judgment. (*See* Hampton's Mot. Summ. J., ECF #10; Commissioner's Mot. Summ. J., ECF #14.)

Hampton made three arguments in her motion for summary judgment: (1) the ALJ's RFC assessment did not comport with the requirements of SSR 12-2p despite the ALJ's finding that Hampton has fibromyalgia; (2) the ALJ's RFC failed to account for evidence of Hampton's limitations with her hands and wrists; and (3)

the ALJ failed to give appropriate weight to the opinion of Hampton's primary care physician, Dr. Delia Ebuen-Mercado. (*See* Hampton's Mot. Summ. J., ECF #10.)

On July 24, 2017, the Magistrate Judge issued the R&R, in which he recommended that the Court grant the Commissioner's motion and deny Hampton's motion. (*See* ECF #18.) The Magistrate Judge considered and rejected all three of Hampton's arguments challenging the ALJ's Decision.

First, the Magistrate Judge concluded the ALJ offered "good reasons" for discounting Dr. Ebuen-Mercado's opinion. (*See id.* at Pg. ID 833.) Second, the Magistrate Judge concluded that the ALJ's failure to cite SSR 12-2p was, at most, a harmless error because the ALJ effectively considered the effect of Hampton's claimed lack of sleep on her ability to function. (*See id.* at Pg. ID 834-35.) Finally, the Magistrate Judge determined that the ALJ's RFC determination was supported by substantial evidence. (*See id.* at Pg. ID 836-37.)

Hampton has now timely filed the Objections to the R&R. Hampton first objects to the Magistrate Judge's determination that the ALJ's failure to cite or apply SSR 12-2p in his RFC assessment was harmless error. (*See* Objections, ECF #19 at Pg. ID 842-46.) Second, Hampton challenges the Magistrate Judge's conclusion that the ALJ adequately considered her limitations with her hands and wrists in his RFC assessment and appropriately rejected Dr. Ebuen-Mercado's opinion concerning these limitations. (*See id.* at Pg. ID 840-42.)

## II

### A

When a party objects to a portion of a Magistrate Judge's R&R, the Court reviews that portion *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *see also Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party has not objected. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### B

In reviewing the disputed findings of the ALJ, the Court is limited to determining whether those findings are supported by substantial evidence and are made pursuant to proper legal standards. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations and quotations omitted).

# III

## A

The Court **SUSTAINS** Hampton's objection to the Magistrate Judge's conclusion that the ALJ's failure to apply SSR 12-2p was a harmless error.

SSR 12-2p describes how an ALJ should "evaluate [fibromyalgia] in disability claims." 2012 WL 3104869, at *1 (July 25, 2012). Among other things, SSR 12-2p requires the ALJ to consider whether "[w]idespread pain and other symptoms associated with [fibromyalgia], *such as fatigue*, [] result in exertional limitations that prevent [the claimant] from doing the full range of unskilled work in one or more of the exertional categories." *Id.* at *6 (emphasis added).

The ALJ should have expressly applied SSR 12-2p – and should have considered the effect of Hampton's fatigue on her functional capacity – because it is undisputed that Hampton has fibromyalgia. (*See* Commissioner's Mot., ECF #14 at Pg. ID 799.) Indeed, the ALJ found that:

> Documentary confirmation of the claimant's fibromyalgia appears of record prior to her alleged onset date, with a formal assessment in January 2010 accompanying negative laboratory testing that ruled out other factors for her complaints of widespread joint paint. March 2010 rheumatology notes indicated the presence of multiple tender points in her joints and soft tissues consistent with such a diagnosis, along with additional blood work ruling out the presence of rheumatoid arthritis or other causes.

(ALJ's Decision, ECF #6-2 at Pg. ID 45; citations omitted.)

The Magistrate Judge concluded that the ALJ's failure to expressly apply SSR 12-2p was, at most, a harmless error because the ALJ (1) considered the entire record and (2) cited evidence in the record that was inconsistent with the notion that Hampton suffered from disabling fatigue. (R&R at Pg. ID 834-35.) The Magistrate Judge highlighted the ALJ's finding that Hampton was performing a number of "regular activities [such as] cooking on a daily basis, driving, and household chores." (*Id.* at Pg. ID 834.) The Magistrate Judge appeared to conclude that because the ALJ found that Hampton retained so much of her normal functioning capacity, the ALJ effectively found that her claimed fatigue was not disabling. Stated another way, the Magistrate Judge seems to have treated the ALJ's finding that Hampton was able to complete so many basic life functions as the rough equivalent of a finding under SSR 12-2p that she was not disabled by fatigue. The Court respectfully disagrees with the Magistrate Judge's analysis and conclusion.

As described below, the ALJ's finding that Hampton retained the ability to complete so many life activities rested upon the ALJ's materially erroneous characterization of the record. And because that finding was flawed, it was not an adequate substitute for the ALJ's failure to consider, as expressly required by SSR-12-2p, whether Hampton's claimed fatigue was disabling.

The ALJ cited Hampton's own testimony and a "Function Report" that Hampton completed in May 2013 as support for his finding that Hampton continued

13

to engage in "a wide array of ongoing activities". (ALJ's Decision, ECF #6-2 at Pg. ID 54-55.)  But Hampton's testimony and the Function Report do not support that finding; on the contrary, they paint a picture of a person would could *not* readily and regularly perform basic life functions.  Indeed, in at least the following ways, the ALJ materially overstated Hampton's self-reported ability to perform basic activities:

(1) The ALJ stated that Hampton "continues to operate a vehicle … with regularity." (ALJ's Decision, ECF #6-2 at Pg. ID 55.)  But Hampton testified that she does "not" drive "very often" – roughly "once a week." (Hearing Tr., ECF #6-2 at Pg. ID 74-75.)  Hampton further testified that she "[doesn't] drive unless [she] really [has] to." (*Id.*)  She added that the furthest she drives is "fifteen minutes," and that during those fifteen minutes she experiences a number of health problems. (*Id.*)   In addition, in the Function Report, Hampton reported that it is "very painful" to drive. (Function Report, ECF #6-6 at Pg. ID 224.)

(2) The ALJ stated that Hampton "shops several times per month." (ALJ's Decision, ECF #6-2 at Pg. ID 54.)  But Hampton testified that she "very rarely" shops alone because she "ha[s] to take breaks" and needs help from her son or daughter. (Hearing Tr., ECF #6-2 at Pg. ID 94-95.)  Hampton further testified that "[s]ometimes they'll just have to sit me down, and go get whatever, and then come back, and check on me, or whatever." (*Id.*)  In the Function Report, she likewise stated that "[has] a hard time being out in public" and she "[doesn't] last long" when she shops. (Function Report, ECF #6-6 at Pg. ID 217, 220.)

(3) The ALJ stated that "[Hampton] continued to engage in a wide array of cooking, cleaning, and other household chores 'everyday' for her husband.'" (ALJ's Decision, ECF #6-2 at Pg. ID 55.)  As support for that finding, he

cited the Function Report, which Hampton completed in May 2013. (*See id*.) However, the ALJ did not acknowledge Hampton's statements in that report that the chores take her "a long time to get done" because "the pain is terrible." (Function Report, ECF #6-4 at Pg. ID 218.) Much more importantly, the ALJ did not acknowledge Hampton's October 2014 hearing testimony in which Hampton testified that she lost the ability to perform chores around October 2013 – five months *after* she completed the Function Report on which the ALJ relied. (*See* Hearing Tr., ECF #6-2 at Pg. ID. 109.) Moreover, Hampton testified that she "very rarely" does dishes or laundry and that she does not vacuum, mop, sweep, or do any outside chores. (*Id.* at Pg. ID. 96.)

(4) The ALJ stated that Hampton "travels with regularity" and stressed that she took "two vacations in the last year alone." (ALJ's Decision, ECF #6-2 at Pg. ID 55.) The ALJ omitted that one of those "vacations" was a day-trip to check on property located in Pinconning, Michigan – roughly a one-hour drive from Hampton's residence. (*See* Hearing Tr., ECF #6-2 at Pg. ID. 101-02.) The ALJ also failed to note that during short rides like the one to Pinconning, Hampton's husband "usually stops a couple of times" to accommodate her condition. (*Id.* at Pg. ID 102.) Hampton's second "vacation" was attendance at an in-state family wedding. (*See id.* at Pg. ID 101.)

(5) The ALJ said that Hampton "continued to prepare meals." (ALJ's Decision, ECF #6-2 at Pg. ID 54.) But Hampton testified that her cooking is limited to placing food in the oven or crockpot where the food can "cook itself." (Hearing Tr., ECF #6-2 at Pg. ID. 93-94.) She further testified that she is *unable* to prepare meals that require her to "stand there and stir." (*Id.*)

As the above examples make clear, the ALJ's finding that Hampton retained

the ability to perform regular activities was based upon a material overstatement of

15

Hampton's self-report of her functional abilities. The Court cannot treat that flawed finding as a fair substitute for an express application of SSR 12-2p. Indeed, the ALJ's failure to expressly consider the effect of Hampton's claimed fatigue and need for naps, as required by SSR 12-2p, was an especially consequential error because the vocational expert testified that if Hampton "need[ed] to nap twice a day for an hour and a half," that (along with her other limitations) would preclude her from finding any employment in the national economy. (*See* Hearing Tr., ECF #6-2 at Pg. ID 116-17.)

Simply put, on this record the Court cannot conclude that the ALJ's failure to apply SSR 12-2p was a harmless error.[2] Instead, the Court concludes that the effect of Hampton's fibromyalgia-related-fatigue constitutes an important unresolved essential factual issue that warrants remand.

---

[2] The Magistrate Judge found this case to be analogous to *Luukkonen v. Commissioner of Social Security*, 653 Fed. App'x 393 (6th Cir. 2016). In *Luukkonen*, the ALJ failed to cite SSR 12-2p in his decision denying benefits to a claimant who suffered from fibromyalgia. The Sixth Circuit held that this error was harmless because the ALJ had considered the claimant's testimony regarding her fatigue and other fibromyalgia-related symptoms but had found that testimony not credible given the other evidence in the record. *See Luukkonen*, 653 Fed. App'x at 399-400. This case stands in contrast to *Luukkonen* because the ALJ here did not accurately describe Hampton's testimony. *Luukkonen* does not suggest that this type of error is harmless.

**B**

On remand, the ALJ is certainly not required to credit Hampton's testimony about her fatigue, nor is he required to find that her fatigue is disabling. He may find, for example, that her testimony about her fatigue is not credible when judged against other evidence or is, for some other legitimate reason, not entitled to much weight. Or he may find that her testimony, even if entitled to some weight, is otherwise insufficient, when considered in the context of the entire record, to support a finding of disability. But he may not overstate Hampton's self-reported ability to perform basic functions and then use that overstatement to support a finding of non-disability, as he did in his original ruling.

**IV**

The Court **OVERRULES** Hampton's second objection that Magistrate Judge erred when he concluded that Hampton's RFC was appropriate even though it did not appear to take into account Hampton's claimed limitations with her hands and wrists.

**A**

Hampton argues that when the Magistrate Judge approved the RFC, he ignored important medical evidence that supported Hampton's claim that she had an extremely limited ability to engage in handling and fingering due to issues with her hands and wrists. (Objections, ECF #19 at Pg. ID 841.) More specifically, Hampton

contends that Magistrate Judge did not mention, among other things, that she had been diagnosed with carpal tunnel syndrome or that an MRI revealed a bulging disc. (*Id.*) But most of the evidence cited by Hampton relates to the results of medical tests or to diagnoses and says little, if anything, about how the conditions or test results actually affected her ability to complete handling and fingering. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) ("[A] mere diagnosis of obesity does not establish either the condition's severity or its effect on [plaintiff's] functional limitations.") Moreover, the ALJ *did* cite and weigh some of the evidence identified by Hampton (*see* ALJ's Decision, ECF #6-2 at Pg. ID 46, 54), and thus there is no reason to believe that the determination of the RFC omitted a consideration of that evidence.

Furthermore, when the ALJ formulated the RFC, he cited and relied upon evidence concerning Hampton's ability to perform handling and fingering, including physical examinations of her hands and wrists that "repeatedly cite[d] the stability of her joints, her retention of full grip strength, the absence of atrophy, and her ability to pick up small items and write 'without difficulty.'" (*Id.* at Pg. ID 54; citations omitted.) This evidence reasonably supports the ALJ's determination that Hampton's claimed limitations did not prohibit her from performing tasks that involved frequent handling and fingering.

**B**

Hampton also criticizes the ALJ for according "little weight" to the opinion of Dr. Ebuen-Mercado, Hampton's treating physician, that Hampton suffered from serious functional limitations with respect to her hands and wrists that would have prevented her from handling and fingering. (*See* Medical Source Statement, ECF #6-8 at Pg. ID 704.)

A treating physician's opinion must be given "controlling weight" if "(1) the opinion 'is well-supported by medically acceptable clinical laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citations and quotations omitted).

The Magistrate Judge properly concluded that the ALJ offered "good reasons" for discounting Dr. Ebuen-Mercado's opinion. (*See* R&R, ECF #18 at Pg. ID 833.) The ALJ explained that he accorded Dr. Ebuen-Mercado's "extreme"

recommendations "little weight" because they were "starkly at odds with the remaining proposals of record." (ALJ's Decision, ECF #6-2 at Pg. ID 58.) The ALJ highlighted that other physicians' assessments directly contradicted Dr. Ebuen-Mercado's findings; that Dr. Ebuen-Mercado was not a specialist in the areas at issue, such as rheumatology and orthopedics; and that Dr. Ebuen-Mercado's opinions conflicted with her own notes from her appointments with Hampton. (*See id.* at Pg. ID 58-59.) As the ALJ explained, "Dr. Mercado's 'checkbox' form stands without any plausible explanation for restrictions so severe that, if accurate, would essentially leave the claimant bedridden and in need of around-the-clock assistive care." (*Id.* at Pg. ID 59.)

In sum, the Magistrate Judge properly concluded that ALJ did not err by adopting an RFC that called for Hampton to perform frequent handling and fingering despite her claimed limitations with respect to her hands and wrists.

## V

For the reasons stated above, **IT IS HEREBY ORDERED** that

- Hampton's Objections to the R&R (ECF #19) are **SUSTAINED IN PART AND OVERRULED IN PART**.

- Hampton's Motion for Summary Judgment (ECF #10) is **GRANTED IN PART**;

- The Commissioner's Motion for Summary Judgment (ECF #14) is **DENIED**; and

- The case is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 25, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 25, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764